AO 451 (Rev. 12/12) Clerk's Certification of a Judgment to be Registered in Another District

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

:Penny-Lee: Gilly
*Plaintiff*
v.
OCWEN
*Defendant*

Civil Action No. RE015220419US
3:16mc21(JAM)

## CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)* 03/02/2015 .

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court, the time for appeal has expired, and no appeal has been filed or, if one was filed, it is no longer pending.

Date: 02/01/2016

*CLERK OF COURT*

:Leighton-Lionell: Ward.
:Leighton-Lionell:Ward.
*Signature of Clerk or Deputy Clerk*

**:FOR THE FEDERAL-POSTAL-COURT-FILING**
**BY THIS FEDERAL-POSTAL-[RE]GISTRATION-NUMBER:**
~ RE015220419US .
**:DATE-~** 1-~FEBRUARY-~2016
**:TIME-~** 9 **O'CLOCK &:** 00 **MINUTES:** AM
**:**Leighton-Lionell:Ward**:CLERK-OF-THE-COURT.**

Pursuant to 28 U.S.C. § 1963 must be enforced in accordance with the laws of the registering state. Federal Rule of Civil Procedure 69(a) provides that procedure "on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable." FED.R.CIV.P. 69(a) (emphasis added).

FILED
2016 FEB -8 PM 2 46
U.S. DISTRICT COURT
NEW HAVEN, CT.

*CERTIFIED COPY OF JUDGMENT*

*TRANSLATION OF FINAL DEFAULT JUDGEMENT*

*This document is to serve as a translation summary of the Final Default Judgment by the Federal Postal Court. The original language of the Final Default Judgment was written in Correct Sentence Structure Communication Parse Syntax Grammar. The language has been translated to English pursuant to the Uniform Foreign-Money Claims Act.*

*IN THE FEDERAL POSTAL COURT*

*Plaintiff, :Penny-Lee: Gilly.*

*Case No.: RE015220419US*

*vs.*

*Defendant. OCWEN*

*FINAL DEFAULT JUDGMENT*

*The defendant(s), OCWEN, having failed to appear, plead or otherwise defend in this action, and default having been entered on March 2 2015. Plaintiff having requested judgment against the defaulted defendant(s) and having filed a proper motion and affidavit (declaration) in accordance with Federal Rule of Civil Procedure 55 (a) and (b); Final Judgment is hereby entered in favor of plaintiff :Penny-Lee: Gilly & against defendant(s) OCWEN, as follows:*

1. *IT IS ADJUDGED AND ORDERED, that defendant(s) OCWEN pay to plaintiff :Penny-Lee: Gilly the sum of $11,509,456 US Dollar Currency, immediately upon notice of this judgment.*
2. *IT IS ADJUDGED AND ORDERED, that defendant(s) OCWEN will delete the loan amount on the Deed of Trust that was created on April 18th 2006. The Deed of Trust issued on April 18 2006 is now paid in full. This is to be completed immediately upon notice of this judgment.*
3. *IT IS ADJUDGED AND ORDERED, that defendant(s) OCWEN submit a completed Deed of Conveyance to the Mohave County recorders office to show the debt on the Deed of Trust issued on April 18 2006 has been fully paid and transfers title of the property to plaintiff :Penny-Lee: Gilly. This is to be completed immediately upon notice of this judgment.*
4. *IT IS ADJUDGED AND ORDERED, that defendant(s) OCWEN will immediately notify the Federal Postal Court Clerk :Leighton-Lionell: Ward by mail when the above judgment terms have been completed. The mailing address is as follows [Federal Postal Court PO BOX 1001 Lake Havasu City AZ 86405]*

:Leighton-Lionell: Ward.

_____________________ *Date: 2/1/2016*

*:Leighton-Lionell: Ward.*
*Clerk of the Federal Postal Court*

**:FOR THE FEDERAL-POSTAL-COURT-FILING**
**BY THIS FEDERAL-POSTAL-[RE]GISTRATION-NUMBER:**
~RE015220419US
**:DATE-**~1-~FEBRUARY-~2016
**:TIME-**~ 9 **O'CLOCK &:** 00 **MINUTES:** 4M
:Leighton-Lionell: Ward **:CLERK-OF-THE-COURT.**

**:FOR THE FEDERAL-POSTAL-COURT-FILING**
**BY THIS FEDERAL-POSTAL-[RE]GISTRATION-NUMBER:**
~RE015220419US.
:DATE-~1-~FEBRUARY-~2016
:TIME-~ 9 O'CLOCK &: 00 MINUTES: AM
:Leighton-Lionell: Ward:CLERK-OF-THE-COURT.

:C.-S.-S.-C.-P.-S.-G.-DOCUMENT-CONTRACT-FEDERAL-POSTAL-VESSEL-FEDERAL-COURT-VENUE-FLAG.

In the DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE-PERFORMANCE of the DOCUMENT-CONTRACT-CORPORATION-CASE-NUMBER-~RB211008765US ARE with these DAMAGE-CLAIMS by the VASALEES'-FRAUDULENT-PARSE-SYNTAX-GRAMMAR-PERFORMANCE.

For this CLAIMANT'S-NAME of this DAMAGE-CLAIM:**Penny-Lee: Gilly**.

For the CLAIMANT-CONTEST of the VASSALEE-PERSONS:

For these VASSALEES: **OCWEN**.

For the CIVIL-CASE-NUMBER-~**RE015220419US**.

:ABREVIATION-TERMS: :C.-S.-S.-C.-P.-S.-G.-P.= CORRECT-SENTENCE-STRUCTURE-COMMUNICATION-PARSE-SYNTAX-GRAMMAR-PERFORMANCE. For this C.-S.-S.-C.-P.-S.-G.-P.-CLERK'S-CERTIFICATION of this C.-S.-S.-C.-P.-S.-G.-P.-FINAL-FAULT-DOCUMENT-CONTRACT-CLAIM-PERFORMANCE-DAMAGE-CLAIMS ARE with the FOREIGN-LOCATION-CLAIM with this CONNECTICUT-DISTRICT of the CONNECTICUT-TERRITORY-COURT with this BONDED-DOCUMENT-CONTRACT-EVIDENCE by the CLAIMANTS:**Penny-Lee: Gilly**.

For this CLERK'S-CERTIFICATION-CLAIM of the C.-S.-S.-C.-P.-S.-G.-P.-DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE-PERFORMANCE ARE with the C.-S.-S.-C.-P.-S.-G.-P.-FINAL-FAULT-DOCUMENT-CONTRACT-CLAIM-PERFORMANCE by the C.-S.-S.-C.-P.-S.-G.-P.-DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE-PERFORMANCE-CLERK:**Leighton-Lionell: Ward**.

For this C.-S.-S.-C.-P.-S.-G.-P.-FINAL-FAULT-DOCUMENT-CONTRACT-CLAIM-PERFORMANCE of the DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE-PERFORMANCE ARE with the VOID-CONTRACT-FEDERAL-RULES of any CONTRACT[APPELLANT]-PERFORMANCE-PENDING with this DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE-PERFORMANCE or: with the TERMINATION/QUIT of the FURTHER-CLAIMS. For this DATE-~1-~FEBRUARY-~2016.

:AUTOGRAPH: FEDERAL-POSTAL-COURT-CLERK: **Leighton-Lionell: Ward**. :DATE-~1-~FEBRUARY-~2016.

:Leighton-Lionell: Ward.

U.S. Postal Service
CERTIFIED MAIL™ RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

WATERLOO IA 50704

7014 1200 0000 7505 5872

| | |
|---|---|
| Postage | $ $1.61 |
| Certified Fee | $3.30 |
| Return Receipt Fee (Endorsement Required) | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $7.61 |

Postmark Here
LAKE HAVASU CITY, AZ 86403
12/10/2014

Sent To: Ocwen
Street, Apt. No.; or PO Box No.: PO BOX 4622
City, State, ZIP+4: Waterloo IA 50704

PS Form 3800, August 2006 — See Reverse for Instructions

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ocwen
PO BOX 4622
Waterloo IA 50704

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X MATT CAUGHRON ☐ Agent ☐ Addressee

B. Received by (Printed Name) Ocwen Loan Servicing C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail® ☐ Priority Mail Express™
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7014 1200 0000 7505 5872

PS Form 3811, July 2013 Domestic Return Receipt

:FOR THE FEDERAL-POSTAL-COURT-FILING
BY THIS FEDERAL-POSTAL-[RE]GISTRATION-NUMBER:
~ RE015220419US.
:DATE-~ 1-~FEBRUAR-~2015
:TIME-~ 9 O'CLOCK &: 00 MINUTES: AM
:Leighton-Lionell: Ward :CLERK-OF-THE-COURT.

:FOR THE FEDERAL-POSTAL-COURT-FILING
BY THIS FEDERAL-POSTAL-[RE]GISTRATION-NUMBER:
~ RE015220419US
:DATE-~ 1-~FEBRUARY-~2016
:TIME-~ 9 O'CLOCK &: 00 MINUTES: PM
:Leighton-Lionell: Ward :CLERK-OF-THE-COURT.

:BONDING: C.-S.-S.-C.-P.-S.-G.: D.-C.-F.-P.-S.-C.-V.-FLAG.

IN THIS D.-C.-F.-P.-S.-C.-V..
FOR THIS Q.-W.-C.-D.- C.-C.-N.-~**RE015220419US**.
FOR THE CLAIMANTS'-KNOWLEDGE OF THE TRESPASS-DAMAGE **ARE** WITH THE F.-S.-S.-C.-P.-S.-G.-EVIDENCE &: DAMAGES BY THE BONDING-EVIDENCE.

:**Penny-Lee**: **Gilly** & :**Leighton-Lionell**: **Ward** WITH THE MAILING-LOCATION-~PO-BOX-~1001,-~LAKE-HAVASU-CITY,-~ARIZONA-~86405.
:FEDERAL-POSTAL-COURT-CLERK: **Leighton-Lionell**: **Ward** WITH THE MAILING-LOCATION-~PO-BOX-~1001,-~LAKE-HAVASU-CITY,-~ARIZONA-~86405.
FOR THE QUALIFICATION-CERTIFICATION OF THE C.-S.-S.-C.-P.-S.-G. WITH THE SYNTAXING-TESTIMONY OF THE VASSALEES'- F.-S.-S.-C.-P.-S.-G.-D..
:CLAIMANTS-PLAINTIFF.
:CONTEST-~VERSUS:
**OCWEN** WITH THE MAILING-LOCATION-~PO-BOX-~4622,-~WATERLOO-~IOWA-~50704 **& NA**(TRUSTEES) WITH THE MAILING-LOCATION-~NA.
:VASSALEE(S).

:CORPORATION-CASE-NUMBER-~**RE015220419US**.
FOR THE C.-S.-S.-C.-P.-S.-G. OF THIS Q.-W.-C.-D. **ARE** WITH THE DAMAGE-CLAIMS BY THE VASSALEES'-F.-S.-S.-C.-P.-S.-G.-D.. FOR THE **TITLE-~29: D.-C.-C.-S.-~701**: [DISA]BILITIES-[AC]T OF THE F.-S.-S.-C.-P.-S.-G.-LANGUAGE: **TITLE-~18**: **D.-C.-C.-S.-~1001** &: F.-S.-S.-C.-P.-S.-G.-STATEMENTS: **TITLE-~15**: **D.-C.-C.-S.-~1692-E ARE** WITH THE PENALTY-FINES: **TITLE-~15**: **D.-C.-C.-S.-~78FF** &: CONSPIRACY: **TITLE-~18**: **D.-C.-C.-S.-~241** &: PERJURY: **TITLE-~18**: **D.-C.-C.-S.-~1621** &: F.-S.-S.-C.-P.-S.-G.-D.: **TITLE-~18**: **D.-C.-C.-S.-~242**: BLOCKING &: STOPPING-EVIDENCE &: WITNESSES. FOR THIS **Penny-Lee**: **Gilly** &: **Leighton-Lionell**: **Ward** AS THE CARETAKER, TRUSTEE &: GUARDIAN-LABOR-WAGES OF THE FOUR-HUNDRED-FIFTY-WEEKS **ARE** WITH THE **$1,513,800.00**-WAGES-CLAIM-LOSS OF THE LAND &: BUILDINGS-LOCATION-~3198-~SHOSHONE-~DRIVE,-~LAKE-HAVASU-CITY,-~ARIZONA-~86406 WITH THE STARTING-DATE-~18-~APRIL-~2006 THROUGH THE NOW-TIME-POSSESSION.

FOR THE TERMS OF THIS C.-S.-S.-C.-P.-S.-G.-NOW-TIME-FEDERAL-POSTAL-STATION-COURT-VENUE-DOCUMENT.
:C.-C. = :CORPORATION-CASE.
:C.-C.-N. = :CORPORATION-CASE-NUMBER.
:CONJUNCTION = :'and','&'= ALSO, COMMAND, 'or'= OPTION, EITHER, CHOICE.
:C.-S.-S.-C.-P.-S.-G. = :CORRECT-SENTENCE-STRUCTURE-COMMUNICATION-PARSE-SYNTAX-GRAMMAR.
:C.-S.-S.-C.-P.-S.-G.-D. = :CORRECT-SENTENCE-STRUCTURE-COMMUNICATION-PARSE-SYNTAX-GRAMMAR-DOCUMENT(S).
:DOCUMENT-STATE = :CORPORATION OF THE TWO-OR-MORE-PERSONS **ARE** WITH THE PORTING-CLAIM WITHIN THE FEDERAL-POSTAL-COURT-PORT-CLERK BY THE DOCUMENT-VESSEL.
:DOCUMENT-VESSEL = :COURT-DOCKETING OF THE DOCUMENT-CONTRACT-POSTAL-VESSEL-PERSONS **ARE** WITH THE CORPORATION-CLAIM BETWEEN THE TWO-OR-MORE-PERSONS WITH THE COURT-DOCUMENT-PORTING-STAMP BY THE FEDERAL-POSTAL-COURT-PORT-CLERK.
:FRAUDULENT/FRAUD = :SPECT, FICTION, MODIFICATION, [O]PINION, [PRE]SUMPTION, [AS]SUMPTION, [IL]LUSION, MISTIC, PHANTOM, PERJURY, LIE, FALSE, FRAUD, MANIPULATION, [DE]CEIVING, [MIS]LEADING.
:D.-C.-C.-R. = :DOCUMENT-CONTRACT-CLAIM-RULES OF THIS D.-C.-F.-P.-S.-C.-V..
:D.-C.-C.-S. = :DOCUMENT-CONTRACT-CLAIMS-SECTION WITH THE C.-S.-S.-C.-P.-S.-G.-WORD-CORRECTIONS OF THE F.-S.-S.-C.-P.-S.-G.-[U]NIT[ED]-STATES-TITLES &: [U]NIT[ED-STATES-CODES **ARE** WITH THE C.-S.-S.-C.-P.-S.-G.-CORRECTIONS BY THIS DOCUMENT-CONTRACT-POSTAL-VESSEL-COURT.
:D.-C.-F.-P.-S.-C.-V. = :DOCUMENT-CONTRACT-FEDERAL-POSTAL-STATION-COURT-VENUE.
:F.-S.-S.-C.-P.-S.-G. = :FRADULENT-SENTENCE-STRUCTURE-COMMUNICAITON-PARSE-SYNTAX-GRAMMAR.
:F.-S.-S.-C.-P.-S.-G.-D. = :FRADULENT-SENTENCE-STRUCTURE-COMMUNICAITON-PARSE-SYNTAX-GRAMMAR-DOCUMENT(S).
:LODIAL = :[ARTICLE] = :SPECIFIC = A, AN, THE, THIS, THE, THAT, ONE, EACH, EVERY, EITHER.
:NOW-TIME-TENSE = :C.-S.-S.-C.-P.-S.-G..
:POSITION = :[PREPOSITION] = :FOR, OF, WITH, BY, IN, AS, ON, WITHIN, VERSUS, THROUGH, THRU, EITHER, BEYOND, INTO.
:POSTAL = :POSTAGE-$1.00-STAMP WITH THE AUTOGRAPHING OF THE C.-S.-S.-C.-P.-S.-G.-KNOWLEDGE BY THE DOCUMENT-CONTRACT-FEDERAL-POSTAL-COURT-CLERK.
:Q.-W.-C.-D. = :QWO-WARRANTO-COMPLAINT-DOCUMENT.
:STATION: D.-C.-F.-P.-S.-C.-V.-LOCATION OF THE DOCUMENT-COURT-FACTS WITH THE DOCKETING &: PASSTHRU OF THE DOCUMENT-FILINGS.
:VASSALEE = :SERVANT-EMPLOYEE OF THIS D.-C.-F.-P.-S.-C.-V..
:VERB = :THINKING-MOTION OF THE KNOWLEDGE = IS = SINGULAR, ARE = PLURAL.
:VESSEL = :MARITIME :ORIGINAL-LOCATION.
:VOLITION = :CLAIMANT'S-KNOWLEDGE OF THE FACTS **ARE** WITH THE CAUSE-CLAIM OF THE MOTION-THINKING WITH THE POSITION OF THE C.-S.-S.-C.-P.-S.-G.-NOW-TIME-VESSEL-COURT-DOCUMENTS.
:U.S.A.C.-FLAG = :[U]NIT[ED]-STATES OF AN [A]MERICA-CORPORATION-FLAG.

~A FOR THE TITLE-~28: D.-C.-C.-S.-~1331 OF THE D.-C.-F.-P.-S.-C.-V.-CLERK'S-DUTIES ARE WITH THE DOCKING OF THE D.-C.-F.-P.-S.-C.-V.-COMPLAINT WITH THIS D.-C.-F.-P.-S.-C.-V.- C.-C.-N.-~RE015220419US OF THIS TITLE-~28: D.-C.-C.-S.-~1361 WITH THE C.-S.-S.-C.-P.-S.-G. BY THE D.-C.-F.-P.-S.-C.-V.-CLERK.

~B FOR THIS FEDERAL-POSTAL-COURT-CLERK'S-CLAIM OF THIS DOCUMENT-EVIDENCE IS WITH THE DAMAGE-CLAIM OF THE F.-S.-S.-C.-P.-S.-G.-LANGUAGE-PLEADINGS VERSUS THE CLAIMANTS BY THE VASSALEES.

~C FOR THIS D.-C.-F.-P.-S.-C.-V.-FEDERAL-POSTAL-COURT-CLERK: **Leighton-Lionell: Ward** OF THIS VACATING-COMMAND VERSUS THESE F.-S.-S.-C.-P.-S.-G.-D.-LOOSE-PAPER-FILINGS ARE WITH THIS AUTHORITY-CLAIM OF AN [AC]TOR-PARTY WITH THE *"FEDERAL-RULES OF THE CIVIL-PROCEDURE: RULE-~44.1"* & WITH THE F.-S.-S.-C.-P.-S.-G.-D. AS THE BONDING-EVIDENCE WITH THIS Q.-W.-C.-D. BY THIS D.-C.-F.-P.-S.-C.-V.-FEDERAL-POSTAL-COURT-CLERK: **Leighton-Lionell: Ward's**-CORRECTIONS OF THE TITLE-~42: D.-C.-C.-S.-~1986 WITH THE AUTHORITY-KNOWLEDGE OF THE STOPPING &: CORRECTING OF THESE F.-S.-S.-C.-P.-S.-G.-D.-WRONGS WITH THE C.-S.-S.-C.-P.-S.-G. BY THE D.-C.-F.-P.-S.-C.-V..

~D FOR THIS CONSTITUTIONAL-DOCUMENT-QUALITY OF THIS COURT-DOCUMENT'S-LOCAL-RULES ARE WITH THE C.-S.-S.-C.-P.-S.-G.-VESSEL-COURT-CLAIMS BY THIS D.-C.-F.-P.-S.-C.-V..

:**DOCUMENT-CLAIM-~1** :C.-S.-S.-C.-P.-S.-G. OF THE C.-S.-S.-C.-P.-S.-G.-FACTS ARE WITH THE FACT-AS-FACT-CLAIM BY THE C.-S.-S.-C.-P.-S.-G.-DOCUMENT-VESSEL.

:**DOCUMENT-CLAIM-~2** :CLERK'S-DUTY OF THE FACTS ARE WITH THE C.-S.-S.-C.-P.-S.-G.-CLAIMS BY THE NOW-TIME-EVIDENCE-CONTINUANCE-DOCUMENT-COURT-PERSONS.

:**DOCUMENT-CLAIM-~3** :CLAIMANTS OF THE EVIDENCE-FACTS ARE WITH THE CLAIMS OF THE SPEECH, WRITINGS, FAITHS, PRESS, DOCUMENT-PORTING WITH THE GRIEVANCES IN A C.-S.-S.-C.-P.-S.-G.-AUTHENTIC-VENUE-COURT.

:**DOCUMENT-CLAIM-~4** :CORPORATION-CASE OF THIS COURT-VESSEL-DOCUMENT ARE WITH THE C.-S.-S.-C.-P.-S.-G.-CLAIMS BY THE PERSON'S-FACTUAL-VOLITION.

:**DOCUMENT-CLAIM-~5** :COURT'S-CONSTITUTION OF THE FACTS ARE WITH THE KNOWLEDGE-CLAIMS BY THE HEREIN-PERSON'S-C.-S.-S.-C.-P.-S.-G..

:**DOCUMENT-CLAIM-~6** :FOR THE CLAIM OF THE C.-S.-S.-C.-P.-S.-G.-CAPTURE-WARRANT or: C.-S.-S.-C.-P.-S.-G.-SEARCH-WARRANT IS WITH THE C.-S.-S.-C.-P.-S.-G.-JUDGE'S-AUTOGRAPH &: WITH THE C.-S.-S.-C.-P.-S.-G.-OATH-AUTHORITY.

:**DOCUMENT-CLAIM-~7** :WITNESSING-DUTY OF THE WITNESS'S-TESTIMONY IS WITH THE C.-S.-S.-C.-P.-S.-G.-CLAIM BY THE WITNESSING-PERSONAL-SELF.

:**DOCUMENT-CLAIM-~8** :WITNESS'S-KNOWLEDGE OF THE C.-S.-S.-C.-P.-S.-G.-FACTS ARE WITH THE CLAIMS OF THE WITNESSES, COUNSELS &: EVIDENCE-FACTS.

:**DOCUMENT-CLAIM-~9** :TWELVE-(12)PERSON-JURY'S-KNOWLEDGE BY THE C.-S.-S.-C.-P.-S.-G.-CLAIMS ARE WITH THE SAME-PLAIN-CLAIMS BY THE C.-S.-S.-C.-P.-S.-G.-TRIAL.

:**DOCUMENT-CLAIM-~10** :TERMS OF THE CONVICTION-PERSON'S-PUNISHMENT ARE WITH THE C.-S.-S.-C.-P.-S.-G.-CLAIMS OF THE BAIL-TERM-CONDITIONS, FINANCIAL-TERM-FINES &:/or: JAILING-TERMS WITH THIS C.-S.-S.-C.-P.-S.-G.-DOCUMENT.

:**DOCUMENT-CLAIM-~11** :D.-C.-F.-P.-S.-C.-V.-FIDUCIARIES OF THE FACTS ARE WITH THE DUTY-CLAIM or: [E]LECTION-CLAIM BY A C.-S.-S.-C.-P.-S.-G.-OATH WITH THIS CORPORATION-DOCUMENT BY THE C.-S.-S.-C.-P.-S.-G..

:**DOCUMENT-CLAIM-~12** :D.-C.-F.-P.-S.-C.-V. OF THE DOCUMENT-CONTRACT-PERSONS-HEREIN ARE WITH THE TITLE-~15: D.-C.-C.-S.-~1635-A: THREE-DAY-[RE]SCISSION-VOLITION-CLOSURE-CLAIM BY THE DOCUMENT, CONSTITUTION, TREATY, CO-OPERATION, D.-C.-F.-P.-S.-C.-V.-STATES-CORPORATION, COMPACT &: PERSONS'-C.-S.-S.-C.-P.-S.-G.-TRUST-DOCUMENTS.

:**DOCUMENT-CLAIM-~13** :CLERK'S-KNOWLEDGE OF THE PAID-DOCKETING OF THE Q.-W.-C.-D.-CONTRACT-TERMS ARE WITH THIS D.-C.-F.-P.-S.-C.-V.-CLERK-CLAIM OF THE FORTY-FIVE-DAY-TRUST-LAW-FAULT-DOCUMENT-CONTRACT-CLAIM WITH THE FAILURE OF THE TWENTY-ONE-DAY-CORRESPONDENCE-BACK WITHIN THE D.-C.-F.-P.-S.-C.-V.-CLERKS'-OFFICE-LOCATION-~**P.O.-BOX-~1001-~LAKE-HAVASU-CITY,-~ARIZONA-~86405**, WITH THE VASSALEES'-C.-S.-S.-C.-P.-S.-G.-CORRESPONDENCE-BACK BY THE THREE-DAY-[RE]CISSION-TIME-LIMIT-PERIOD WITH THE C.-S.-S.-C.-P.-S.-G.-CLERK'S-OATH.

**FOR THE CAUSES OF THIS Q.-W.-C.-D.**.

~1 FOR THE C.-S.-S.-C.-P.-S.-G.-CORRECTIONS OF THESE VASSALEES'-COURT-DOCUMENTS ARE WITH THE DAMAGE-CLAIMS OF THE VASSALEE'S-WRONG-WORD-MEANINGS-BONDING-EVIDENCE WITH THE FOUR-TIMES-EQUITY-DAMAGES OF THE F.-S.-S.-C.-P.-S.-G.-D. WITH THE D.-C.-C.-R.-~56: COMMAND-SUMMARY-CORRECTION-AUTHORITY: TITLE-~42: D.-C.-C.-S.-~1986 WITH THE C.-S.-S.-C.-P.-S.-G.-KNOWLEDGE VERSUS THE F.-S.-S.-C.-P.-S.-G.-D.-COMMUNICATIONS BY THE VASSALEES.

~2 FOR THIS CLAIMANTS'-KNOWLEDGE OF THE VASSALEES'-EVIDENCE ARE WITH THE NOW-TIME-FACTS OF THE POSITIONAL-LODIAL-FACT-PHRASES &: VERBS: IS=SINGLAR &: ARE=PLURAL WITH THE SINGLE-[I]DEA-NOW-TIME-CONTENT-SENTENCE-STRUCTURE-FACTS BY THE *CLAIMANT'S-DOCUMENT-CLOSURE-VOLITION*.

~3 FOR THE CLAIMANTS'-KNOWLEDGE OF THE C.-S.-S.-C.-P.-S.-G.-CORRESPONDENCE-PLEADINGS ARE WITH THE C.-S.-S.-C.-P.-S.-G.-CORRESPONDENCE-PLEADING-CLAIMS VERSUS THE VASSALEES'-F.-S.-S.-C.-P.-S.-G.-D..

~4 FOR THE C.-S.-S.-C.-P.-S.-G.-SALVAGE-CLAIM: TITLE-~46: D.-C.-C.-S.-~781 IS WITH AN AUTHENTIC-AUTHORITY-VENUE-CLAIM BY THE D.-C.-F.-P.-C.-V.-EVIDENCE *WITHIN THIS C.-S.-S.-C.-P.-S.-G.-COMMUNICATION-CLOSURE-EVIDENCE-DOCUMENTS*.

~5 FOR THE CLAIMANT'S-FACTUAL-EVIDENCE OF THE F.-S.-S.-C.-P.-S.-G.-D. ARE WITH THE DAMAGE-CLAIM OF THE C.-S.-S.-C.-P.-S.-G.-C.-C..

~6 FOR THIS TITLE-~42: D.-C.-C.-S.-~1986 OF THE FEDERAL-POSTAL-COURT-CLERK'S-KNOWLEDGE WITH THE STOPPING OF THE F.-S.-S.-C.-P.-S.-G.-D.-EVIDENCE & WITH THE CORRECTING ARE WITH THE DAMAGE-CLAIM VERSUS THE VASSALEE-[AT]TORNEY-F.-S.-S.-C.-P.-S.-G.-D.-PLEADING-WRONGDOINGS WITH THE CORRECTION-CLAIMS OF THE CONTRACTING-LAWS, RULES, [RE]GULATION, CODES &: VESTIGATION-STATEMENTS WITH THESE VASSALEES OF THE TITLE-~31: D.-C.-C.-S.-3729-THROUGH-TITLE-~31: D.-C.-C.-S.-3733: 'FALSE-CLAIMS-[AN]TITRUST-[AC]T' WITH THE CORRECTION-[I]DENTIFICATION-NUMBERING-KEY-CODE OF THE C.-S.-S.-C.-P.-S.-G.-WORD-[I]DENTIFICATION WITH THE VASSALEE'S-PERJURY, FRAUD &: [MIS]LEADING-STATEMENTS, GUESSING, LYING, [O]PINIONS, [AS]SUMPTIONS, [PRE]SUMPTIONS &: [OB]STRUCTION-LAWS, CODES, [RE]GULATIONS, RULES &: [OR]DINANCES BY THE F.-S.-S.-C.-P.-S.-G.-D.-EVIDENCE.

**~7** FOR THE [NE]GATIVE-WORD-VOLITIONS: [PRE]FIX-WORDS, NOT, NO, PRA, PRE, PRI, PRO, PRU, A, AB, AC, AD, AF, AL, AP, AR, AT, E, EN, EM, EF, EX, IL, IM, IN, OB, OC, OF, ON, OR, UM, UN, WITHOUT OF THE VASSALEES **ARE** WITH THE DAMAGE-CLAIM AS THE MODIFICATIONS-VOLITION WITH THE VACATING-CLAIMS OF THE CORRECT-CLOSURES WITH THE VASSALEES &: CLAIMANTS.

**~8** FOR THE FRAUDULENT-USES OF THE FACTS **ARE** WITH THE [NE]GATIVE-CLAIM OF THE [PRE]FIXES: A, AB, AC, AD, AF, AN, DE, DIS, EM, EN, EX, I, IM, IN, MAL, MIS, NE, NO, NON, NOR, O, OB, OC, OP, OF, PRA, PRE, PRI, PRO, PRU, RE, SI, SUB, TO, UN, or WITH THE MODIFICATION OF THE FACT WITH AN [AD]VERB or: [AD]JECTIVE-MODIFICATION OF THE C.-S.-S.-C.-P.-S.-G.-CLAIM WITH THE **TITLE-~18**: **D.-C.-C.-S.-~1001** OF THE FICTITIOUS-GRAMMAR &: FRAUD-&: [MIS]LEADING-STATEMENTS: **TITLE-~15**: **D.-C.-C.-S.-~1692-~E** WITH THE FACTUAL-CORRECTIONS BY THIS DOCUMENT-CONTRACT-FEDERAL-POSTAL-COURT-CLERK.

**~9** FOR THE VASSALEE'S-WRITTEN-VOLITIONS OF THE F.-S.-S.-C.-P.-S.-G.-D.-BONDING-EVIDENCE-DOCUMENTS **ARE** WITH THE PHYSICAL-EVIDENCE-TRESPASSING-DAMAGE-CLAIMS OF THE COPYRIGHT-COPYCLAIM-TRESPASSING & ON THE QUIET-TITLE-WARNING &: USING-CLAIMANTS'-COPYRIGHT-COPYCLAIM-WRITING WITH THE TORT OF THE MONEY-[PRO]FITEERING WITH THE VOID-GRANT-PERMISSION-CONTRACT OF THE MONEY-[PRO]FITS WITH THE COPYING OF THE CLAIMANTS-WRITTINGS WITH THE [PRO]FITEERING-KNOWLEDGE OF THE F.-S.-S.-C.-P.-S.-G.-D.-COMMAND VERSUS THE CLAIMANT BY THE VASSALEES &: [AC]TORS-DIFFERENT-STAGE-PLANE OF THE F.-S.-S.-C.-P.-S.-G.-LOCATION.

**~10** FOR THE WORDS OF AN [AD]VERB-F.-S.-S.-C.-P.-S.-G.-MODIFICATIONS **ARE** WITH THE USE OF THE SINGLE-[PRE]POSITION or: SINGLE-LODIAL-[ARTICLE] WITH THE POSITION AS AN [AD]VERB-SYNTAX-GRAMMAR WITH THE VOID OF THE POSITIONAL-LODIAL-FACT-PHRASE WITH THE SINGLE-WORD-MODIFIER AS THESE: A, AM, AN, AS, AT, BECAUSE, BEFORE, BEGIN, BUT, BY, CAN, COME, COULD, DID, DO, DOES, FROM, HE, HER, I, IN, INTO, JUST, OF, OVER, HAS, HIS, HER, HOW, IT, JUST, MUCH, NO, NOT, PUT, RE, SO, SHALL, SHE, SHOULD, SOME, SUCH, THAT, THAN, THE, THEY, THEIR, THEM, THEN, TO, THIS, THOSE, THROUGH, UNDER, USE, WANT, WAS, WE, WHEN, WHAT, WHERE, WITH, WITHIN, WITHOUT, WHO, WHOM, WOULD, YOU, YOUR, WITH THE VERB-FRAUDULENT-LAW &:/or: VERB-SYNTAX-FRAUDULENT-FACT BY THE VASSALEES.

**~11** FOR THE CLOSURE-FRAUD OF THE VASSALEE'S-WRONG-WORD-MEANINGS **ARE** WITH THE CLOSURE-FRAUD OF THE SENTENCE-STRUCTURES WITH THE VIOLATIONS-CLAIMS OF THE **TITLE-~18**: **D.-C.-C.-S.-~1001**: F.-S.-S.-C.-P.-S.-G. &: **TITLE-~15**: **D.-C.-C.-S.-~1692-~E** WITH THE FALSE-WRITINGS &: [MIS]LEADING-STATEMENTS OF THE FRAUD-PENALTY-FEE: **TITLE-~15**: **D.-C.-C.-S.-~78-~FF($25-MILLION-DOLLARS-PENALTY-FINES)** BY THE VASSALEES.

**~12** FOR THE CLAIMANT'S-KNOWLEDGE OF THE FACTS **ARE** WITH THE DAMAGE-CLAIMS OF THE VOLITION-PERJURY &: FRAUDULENT-WILLS WITH THE **TITLE-~18**: **D.-C.-C.-S.-~1621** OF THE FRAUDS &: PERJURY OF AN OATHS, FRAUDULENT-RULINGS &: MOTIONS WITH THIS C.-C. BY THE VASSALEES.

**~13** FOR THE HANDICAPPING OF THE CLAIMANTS WITH THE F.-S.-S.-C.-P.-S.-G.-WRITTEN-TRESPASS-POSTING **ARE** WITH THE **TITLE-~29**: **D.-C.-C.-S.-~701**: [DISA]BILITY-[AC]T-VIOLATION-CLAIM AS THE HANDICAPPING-CAUSE WITH THE FOREIGN-RULINGS &: MOTIONS BY THE VASSALEES'-VOID-CLOSURE, CONTEMPT &: F.-S.-S.-C.-P.-S.-G.-D..

**~14** FOR THE F.-S.-S.-C.-P.-S.-G.-VIOLATIONS OF THE VASSALEES-PLEADINGS **ARE** WITH THE [PRE]SUMPTIONS, [AS]SUMPTIONS, [O]PINIONS, [A]PARTHEID &: MODIFICATIONS OF THE WORDS WITH AN AUTHENTIC-FRAUDULENT-[IL]LUSIONAL-COURT.

**~15** FOR THIS **Penny-Lee: Gilly**&: **Leighton-Lionell: Ward** AS THE CARETAKER, TRUSTEE, GUARDIAN-LABOR-WAGES OF THE FOUR-HUNDRED-FIFTY-WEEKS **ARE** WITH THE WAGES-CLAIM OF THE **$1,513,800.00** FROM THE DATE-~18-~APRIL-~2006 THROUGH THE CURRENT-TIME.

**~16** FOR THE ONE-THOUGHT OF THE ONE-AUTHORITY-VENUE-NOW-TIME-VENUE-COURT **ARE** WITH THE PLEADING-CLAIMS OF THE DOCUMENT-C.-C. WITH THE SUMMARY-CORRECTION BY THE FEDERAL-POSTAL-COURT-CLERK.

**~17** FOR THE F.-S.-S.-C.-P.-S.-G. OF THE [PRONOUNS] &: [NOUN]-VERBS = GERUND-[NOUNS] **ARE** WITH THE MODIFICATION &: [O]PINION-CLAIMS OF AN [AD]JECTIVE-FRAUDULENT-USE-DEAD-NAME = PSEUDONYM WITH THE MAIL-FRAUDS OF THE D.-C.-F.-P.-C.-V.-**TITLE-~18**: **D.-C.-C.-S.-~1342** WITH EACH VASSALEES'-FACTUAL-EVIDENCE BY THE STOPPING &: CORRECTING-FACTS.

**~18** FOR THE FACTUAL-EVIDENCE OF THE VASSALEE'S-WRITINGS-SKILLS **ARE** WITH THE CLAIMS OF THE F.-S.-S.-C.-P.-S.-G.-WRITING-LAW-TESTS &: VOID OF THE C.-S.-S.-C.-P.-S.-G.-SKILLS WITH THE READING OR: WRITING-DAMAGE.

**~19** FOR THE [PRE]FIX-FUTURE-TIME: "TO", "PRE" &: SUFFIX-PAST-TIME: "ED", "FROM" **ARE** WITH THE FRAUDULENT-VIOLATION-CLAIM OF THE VOID-NOW-TIME & CONTINUANCE OF THE FACTUAL-CLAIM.

**~20** FOR THE **TITLE-~18**: **D.-C.-C.-S.-~1621**: PERJURY OF AN OATH **IS** WITH THE LOSS OF THE VENUE WITH THE TAKING, [AC]TING &: PRACTICING or: CONDUCTING-CRIMINAL-[AC]TIONS BY THE VASSALEE-[AC]TOR-JUDGE, [AT]TORNEY &: LAWYER or: PERSON.

**~21** FOR THE **TITLE-~18**: **D.-C.-C.-S.-~641**: TAKING or: STEALING OF THE GOVERNMENT-[PRO]PERTY or: MONEY **ARE** WITH AN [AD]VERB-VERB-F.-S.-S.-C.-P.-S.-G.-VOUCHER, [I]TALIC-SYNTAX-WORD-VACATING-STYLES-DOCUMENTS BY THE F.-S.-S.-C.-P.-S.-G.-D.-PAY-VOUCHER-VASSALEE. (:FALSE-CLAIMS-[AC]T FOR THE EQUITY-PAYCHECK-MOTIVATION &: GRADIFICATION.)

**~22** FOR THE FALSE-CLAIMS-[AC]T OF THE LAWSUIT-CONSTRUCTION &: DIRECTION **IS** WITH THE CLAIMANTS'-WITNESSING-F.-S.-S.-C.-P.-S.-G.-EVIDENCE OF THE THIRTY-FIVE-PERCENT-FINDERS-FEES &: WITNESSING-FEE VERSUS THE FRAUDULENT-CONTRACT-BANKING-DOCUMENTS WITH THIS C.-S.-S.-C.-P.-S.-G.-CONTRACT.

**~23** FOR THE DOCUMENT-RULES OF THE ONE-VENUE-C.-S.-S.-C.-P.-S.-G.-AUTHORITY **ARE** WITH THE CLOSURE-CLAIM OF THE FACTUAL-F.-S.-S.-C.-P.-S.-G.-D.-EVIDENCE-FORMAT BY THE VASSALEES.

**~24** FOR THE CLAIMANT'S-KNOWLEDGE OF THE FREEDOM-LOSS **IS** WITH THE FRAUDULENT-VOLITION-FORCE-DAMAGE BY THE VASSALEES'-F.-S.-S.-C.-P.-S.-G.-D. WITH THE TRESPASSING ON THE **Penny-Lee: Gilly's** &: **Leighton-Lionell: Ward's**-EQUITY.

**~25** FOR THE FRAUDULENT-USE OF THE SYNTAX-WORD-MODIFICATIONS **ARE** WITH THE DAMAGE-CLAIMS OF THE WORD-FACTS WITH THE GERUND-VERBS, [AD]VERBS, [PRONOUNS] or: [AD]JECTIVES WITH THE PERJURY-OATH OF THE DUTY-COURT-MEMBERS.

**~26** FOR THE F.-S.-S.-C.-P.-S.-G.-D.-EVIDENCES OF THE FRAUDULENT-COURT-[IL]LUSIONS **ARE** WITH THE EVIDENCE-MONEY-THEFT BY THE (PAY-CHECKS &: FRAUDULENT-[AT]TORNEY-FEES-[OR]DERS) BY THIS LETTER-SPACING-[UN]DERSCORING WITH THE FRAUDULENT-[IL]LUSION-WORDS WITH THE EQUITY-DAMAGES OF THE **TITLE-~15**: **D.-C.-C.-S.-1692-~E**: FRAUD &: [MIS]LEADING-STATEMENT-DAMAGES: **TITLE-~15**: **D.-C.-C.-S.-~78-~FF** OF THE CRIMINAL-PENALTIES:**[$25-MILLION-DOLLARS]** BY THE C.-S.-S.-C.-P.-S.-G.-FALSE-CLAIMS-[AC]T: **TITLE-~31**: **D.-C.-C.-S.-~3729-THROUGH-TITLE-~31**: **D.-C.-C.-S.-~3733**. (SYNTAX BY THE C.-S.-S.-C.-P.-S.-G..)

~27 FOR THE CLAIMANT'S-KNOWLEDGE OF THE CLOSURE-DOCUMENT-CLAIMS-**RULE~26-~E** **ARE** WITH AN AUTHORITY-CLAIM OF THE CLOSURE-EVIDENCE-FACTS-DAMAGES WITH THE **TITLE-~42**: **D.-C.-C.-S.-~1986**: KNOWLEDGE OF THE C.-S.-S.-C.-P.-S.-G.-CORRECTION WITH THE VASSALEES'-F.-S.-S.-C.-P.-S.-G.-D..

~28 FOR THE VOLITION BY THE FALSIFICATION, CONCEALMENT &: COVER-UP **ARE** WITH THE FACTUAL-EVIDENCE-CLAIMS &: CONFESSION OF THE TRICKS &: SCHEMES WITH THE VASSALEES'-F.-S.-S.-C.-P.-S.-G.-D.-TRESPASS-WARNING-MEANING-DOCUMENTS WITH THE PARTICIPATION-CONTINUATION-CONSPIRACY BY THE VASSALEES.

~29 FOR THE FALSE-CLAIMS-[AC]T: **TITLE-~31**: **D.-C.-C.-S.-~3729-THROUGH-~3733**, C.-S.-S.-C.-P.-S.-G.-CORRECTIONS OF THE FEDERAL-[AT]TORNEY-GENERAL-KNOWLEDGE ARE WITH THE EQUITY-CLAIM OF THE DOCUMENT-EVIDENCE-AUTHORITY-FILING WITH THE THIRTY-FIVE-PERCENT-ROYALTY-PORTION-EQUITY-CLAIM.

~30 FOR AN AUTHENTIC-TORT-CLAIMS-(U.S.A.C.-FLAG) OF THE FALSE-CLAIMS-ACT-(U.S.A.C.-FLAG) **ARE** WITH THE KNOWLEDGE-CLAIM OF THE LIABILITY-DAMAGE-(U.S.A.C.-FLAG) WITH THE FRAUDULENT-MONITARY-BANK-GAINS-(U.S.A.C.-FLAG) OF THE FRAUDULENT-CONTRACT-PAYMENT-GOVERNMENT-GUISE-(U.S.A.C.-FLAG) WITH THE FALSE-EQUITY-TRANSFER-CLAIM-PAYMENT-OUT-(U.S.A.C.-FLAG) &: [RE]SCISSION-[AC]T-FINANCIAL-PLACEMENT-(U.S.A.C.-FLAG) WITH THE PERFORMANCE-KNOWLEDGE-CLAIM BY THE F.-S.-S.-C.-P.-S.-G.-D. &: F.-S.-S.-C.-P.-S.-G.-D.-STATEMENT OF THE CLAIMING-BANK-PERSON-(U.S.A.C.-FLAG) WITH THE CONTRACTING-CONSPIRACY BY THE 'FALSE-CLAIMS-ACT-(U.S.A.C.-FLAG)' &: FRAUDULENT-CERTIFYING-TYPE, KIND &: VALUE-AMOUNT-(U.S.A.C.-FLAG) WITH THE F.-S.-S.-C.-P.-S.-G.-(U.S.A.C.-FLAG) BY THE POSTAL-AUTHORITY-(U.S.A.C.-FLAG).

~31 FOR THE FALSE-CLAIMS-[AC]T OF THIS DOCUMENT-CONTRACT-POSTAL-VESSEL-COURT **ARE** WITH THE DAMAGE-CLAIMS OF THE CONTRACTORS-(U.S.A.C.-FLAG) WITH THE FRAUD-CONTRACT-PERFORANCES-(U.S.A.C.-FLAG) OF THE WRITING-CONTRACT-(U.S.A.C.-FLAG) &: WITH THE C.-S.-S.-C.-P.-S.-G.-DUTY-CONTRACTS-(U.S.A.C.-FLAG).

~32 FOR THE [AT]TORNEY'S-GENERAL OF THE [UN]IT[ED]-STATES-GOVERNMENT-(U.S.A.C.-FLAG) OF AN [A]MERICA-CORPORATION-TREASURY-(U.S.A.C.-FLAG-~2-~FEBRUARY-~2000) **ARE** WITH THE CLOSURE-CLAIM OF THE [UN]IT[ED]-STATES-FEDERAL-POSTAL-SERVICE-GOVERNMENT-(U.S.A.C.-FLAG) WITH THE CLOSURE BY THE FALSE-CLAIMS-[AC]T-(U.S.A.C.-FLAG) OF THE **TITLE-~31**: **D.-C.-C.-S.-~3729-THROUGH-TITLE-~31**: **D.-C.-C.-S.-~3733**: C.-S.-S.-C.-P.-S.-G.-CORRECTIONS BY THE D.-C.-F.-P.-S.-C.-V.-FEDERAL-POSTAL-COURT-CLERK.

~33 FOR THE DUTY-AUTHORITY-TREATY OF THE [AT]TORNEY-GENERAL'S-POWERS ARE WITH THE C.-S.-S.-C.-P.-S.-G.-CONTRACT-DOCUMENTATION-CLAIM OF THE BILLS OF THE LADING WITH THE DOCUMENT-EVIDENCE OF THE MATERIAL-CRIMINAL-VIOLATIONS WITH THIS C.-C. OF THIS DOCUMENT-CONTRACT-POSTAL-VESSEL-COURT.

~34 FOR THE CLAIMANTS'-KNOWLEDGE OF THE GOVERNMENTS'-CRIMINAL-MONEY-PAYMENTS(OUT) or: CRIMINAL-MONEY-CONSPIRACY-COLLECTION-CLAIMS **ARE** WITH THE GOVERNMENTS'-DAMAGE-CLAIM VERSUS THE VASSALEES-F.-S.-S.-C.-P.-S.-G.-D. BY THE VASSALEES.

~35 FOR THE LAW OF THE FLAG OF THE QUI-TAM-(SAME-U.S.A.C.-FLAG) **ARE** WITH THE CONTRACT-DOCUMENT-CO-OPERATION-JOINING-CLAIM OF THE CLAIMANTS-CITIZEN-BONDING-EVIDENCE &: C.-S.-S.-C.-P.-S.-G.-D.-Q.-W.-C.-D-LAWSUIT OF THE [UN]IT[ED]-STATE-TERRITORY-[AT]TORNEY-GENERAL-(SAME-U.S.A.C.-FLAG) &: CLAIMANTS'-EVIDENCE OF THE C.-S.-S.-C.-P.-S.-G.-CONTRACT-CRIMINAL-VIOLATION &: C.-S.-S.-C.-P.-S.-G.-CONTRACT-CRIMINAL-VOLITION WITH THE FRAUD &: CONDITION OF THE MIND WITH THE CONTRACT-DUTY: **TITLE-~42**: **D.-C.-C.-S.-~1986**: KNOWLEDGE-(SAME-U.S.A.C.-FLAG) WITH THE CRIMES OF THIS STOPPING &: CORRECTING-F.-S.-S.-C.-P.-S.-G.-D.-EVIDENCE WITH THE CONTRACT-FILING-CLAIMS-(SAME: U.S.A.C.-FLAG) BY THE D.-C.-F.-P.-S.-C.-V.-AUTHORITY-(:U.S.A.C.-FLAG).

~36 FOR THE FALSE-CLAIMS-[AC]T-WHISTLE-BLOWER-PERFORMANCE OF THE **TITLE-~18**: **D.-C.-C.-S.-~641** WITH THIS Q.-W.-C.-D. **ARE** WITH THE CONTRACT-DAMAGE-CLAIM OF THE CONSPIRACY-LIABILITY WITH THE PERSONS &:/or: CORPORATION, COMPANY, CO-OP OF THE CONTRACT-DRYDOCK-COURTS &: JUDGES-WAGE-PAYMENTS BY THE PORT-AUTHORITIES OF THE [UN]IT[ED]-STATES OF AN [A]MERICA-CORPORATION-POSTAL-SERVICE WITH THE VOLITION OF THE F.-S.-S.-C.-P.-S.-G.-D. &: FITICIOUS-GRAMMAR: **TITLE-~18**: **D.-C.-C.-S.-~1001**, **TITLE-~15**: **D.-C.-C.-S.-~1692-E**: FRAUD &: [MIS]LEADING-F.-S.-S.-C.-P.-S.-G.-STATEMENTS &: MONEY-PENALTIES: **TITLE-~15**: **D.-C.-C.-S.-~78~FF** WITH THE F.-S.-S.-C.-P.-S.-G.-PENALTIES OF THE MAIL-FRAUD: **TITLE-~18**: **D.-C.-C.-S.-~1341** WITH THE MONEY-TORT BY THE DOCUMENT-COURT-JUDGE &:/or: BANKING-FRAUD-DOCUMENTS WITH THE **TITLE-~18**: **D.-C.-C.-S.-~242**: [DE]PRIVATION OF THE RIGHTS WITH THE COLORING OF THE LAWS WITH THE PUBLICATION OF THE **TITLE-~42**: **D.-C.-C.-S.-~1985-~1**: CONSPIRACY WITH THE PERSONS OF THE **TITLE-~42**: **D.-C.-C.-S.-~1985-~2**: BLOCKING &: STOPPING WITH THE EVIDENCE &: WITNESSES BY THE **TITLE-~18**: **D.-C.-C.-S.-~1001**: FRAUDULENT-LANGUAGE-MODIFICATIONS OF THE F.-S.-S.-C.-P.-S.-G.-D.-EVIDENCE WITH THE **TITLE-~42**: **D.-C.-C.-S.-~1985-~3**: BLOCKING &: STOPPING WITH THE WITNESSES &: EVIDENCE BY THE **TITLE-~18**: **D.-C.-C.-S.-~1001**: F.-S.-S.-C.-P.-S.-G.-MODIFICATION OF THE CAUSING WITH THE PARTICIPATION OF THE **TITLE-~18**: **D.-C.-C.-S.-~1961**: RACKETEERING WITH THE **TITLE-~18**: **D.-C.-C.-S.-~3**: PARTICIPATING-CRIME &: CRIMINAL-VIOLATIONS &: **TITLE-~18**: **D.-C.-C.-S.-~4**: [MIS]PRISON WITH THE FELONY OF THE DOCUMENT-EVIDENCE WITH THE DOCUMENT-CONTRACT-POSTAL-VESSEL-COURT BY THE GOVERNMENTAL-SUPPORT-[PRO]GRAMS, :GOVERNMENT-PLOYEES, :James: Touhey WITH THE [DE]PARTMENT-OF-JUSTICE, :Sean: McKessy & :Jane :Norberg WITH THE SECURITIES-&-[EX]CHANGE-COMMISSION &: VASSALEES.

~37 FOR THE GOVERNMENTS'-POSSESSIONS OF AN EQUITY-MONEY-LOSS **ARE** WITH THE CORRRECTION-CLAIM OF THE C.-S.-S.-C.-P.-S.-G.-CONTRACT-DOCUMENTATION WITH THE QUI-TAM-LAWSUITS-CLAIM OF THE VASSALEES-[DE]FENDANT-AUTOGRAPH-VIOLATION-LIABILITIES &: RECKLESS-VOLITION WITH THIS C.-C. OF THE C.-S.-S.-C.-P.-S.-G.-EVIDENCE-DUTY-ELEMENTS WITH THE VIOLATORS-POSITION OF THE FOUR-TIMES-MONEY-DAMAGES WITH THE **$5,000.00-TO-$10,000.00-FALSE-CLAIM**: FRAUD &: [MIS]LEADING-STATEMENTS: **TITLE-~15**: **D.-C.-C.-S.-~1692-~E** OF THE PENALTY: **TITLE-~15**: **D.-C.-C.-S.-~78-~FF** WITH THE **$25-MILLION-FINE** OF THE **THIRTY-FIVE-PERCENT** WITH THE COLLECTION-EQUITY-MONEY: .999-SILVER-COINS-VALUE OF THE QUI-TAM-CLAIMANTS-PLAINTIFFS'-WITNESSING &: PERFORMANCE-WORK-CONSOLIDATION WITH THE CERTIFYING-EVIDENCE &: C.-S.-S.-C.-P.-S.-G.-CONTRACT-PERFORMANCE-DUTY OF AN EQUITY-MONEY-COVERY WITH THE **THIRTY-FIVE-PERCENT** WITH THE SUCCESSFUL-CLAIMANT'S/PLAINTIFF'S-[EX]PENSES OF THE VASSALEES'-NOW-TIME-FACT-PAYMENT WITH THE PLOYMENT-SECURITY OF THE C.-S.-S.-C.-P.-S.-G.-STATMENTS WITH THE SPECIAL-DAMAGES &: DOUBLE-BACK-PAY BY THE VASSALEES-EVIDENCE-CONFESSION-DOCUMENT.

~38 FOR THE SUPPORTING-TERMS OF THIS D.-C.-F.-P.-S.-C.-V. **ARE** WITH THE D.-C.-F.-P.-S.-C.-V.-CLAIMS BY THIS Q.-W.-C.-D..

~39 FOR THE **TITLE-~42**: **D.-C.-C.-S.-~1986**: KNOWLEDGE OF THE DOCUMENT-DUTIES **ARE** WITH THE CLAIM OF THE CORRECTION WITH THE F.-S.-S.-C.-P.-S.-G.-COMMUNICATIONS BY THE C.-S.-S.-C.-P.-S.-G.-D..

**~1** FOR THE **D.-C.-C.-R.-~4**: PROCESS OF THE SERVICE ~A: SUMMONS, ~B: FORM, ~C: SERVICE OF THE CLAIMS **IS** WITH THE PERSONS'-KNOWLEDGE ~D: SUMMONS &: COMPLAINT BY THE TWENTY-ONE-DAYS-CORRESPONDENCE-BACK WITH THE CLERK OF THE DOCUMENT-CONTRACT-POSTAL-VESSEL-COURT, ~G: JOINING-PROOF OF THE SERVICE WITH THE CLERK OF THE COURT, ~H: COURT-SCHEDULING-TIMES BY THE SERVICE, ~J: TIME-LIMIT OF THE TWENTY-ONE-DAYS-JOINING-CORRESPONDENCE-BACK-SERVICE WITH THE COMPLAINT &: SUMMONS BETWEEN THE CLAIMANTS &: VASSALEES.

**~2** FOR THE D.-C.-C.-R.-~5: SERVICE: ~A: QUIREMENT, ~D: CLAIMS OF THE FILING, ~E: FILING OF THE **IS** WITH THE SERVICE-CLAIM-PERSON BY THE EIGHTEEN-YEARS(18)-YEARS-AGE.

**~3** FOR THE **D.-C.-C.-R.-~6**: TIME: ~A: COMPUTATION-FEDERAL-CASES-EVERYDAY-CONTINUANCE WITH THIS C.-S.-S.-C.-P.-S.-G.-FEDERAL-COURT, ~D FOR THE COMPLAINTS &: STATEMENTS OF THIS C.-C. **ARE** WITH THE SERVICE OF THE TWENTY-ONE-DAYS-CORRESPONDENCE-CLAIMS WITH THE CLAIMANTS &: VASSALEES.

**~4** FOR THE **D.-C.-C.-R.-~7**: PLEADINGS: ~A: PLEADINGS IN THE C.-S.-S.-C.-P.-S.-G., ~B: COMPLAINT OF THE C.-S.-S.-C.-P.-S.-G.-CLAIMS **ARE** WITH THE DAMAGES BY THE C.-S.-S.-C.-P.-S.-G.-CORRECTION-POSITION. :COMMENT. FOR THE CLAIMS OF THE FRAUDS **ARE** WITH THE CLAIMANT'S-COMPLAINT BY THE SUING WITH THE CORRECT-MEANINGS-CORRECTIONS OF THE WORDS &: CLOSURES WITH THE COMPLAINT OF THE FRAUDULENT-VASSALEE'S-PLEADINGS WITH THE WRITING-AUTOGRAPH-CONFESSION.

**~5** FOR THE **D.-C.-C.-R.-~8**: CLAIMS OF THE PLEADINGS **ARE**: ~A: CLAIMS OF THE DAMAGES BY THE COMPENSATION-FEES, MONEY &: VALUE-[PRO]PERTY-C.-S.-S.-C.-P.-S.-G.-CORRECTIONS, ~B: C.-S.-S.-C.-P.-S.-G.-CLAIM, ~C: OATH-CLAIM IN THE C.-S.-S.-C.-P.-S.-G.-CLAIMS, ~D: FAILURE OF THE CORRECT-FACTS = :PERJURY, FRAUD, LIES, FRAUDULENT, [PRE]SUMPTIONS, [AS]SUMPTIONS, [O]PINIONS, MODIFICATIONS &: [A]PARTHEID, ~E: PLEADINGS BY THE CONCISE-MEANINGS &: TERMS OF THE ONE-THOUGHT-IN-EVERY-SENTENCE WITH THE C.-S.-S.-C.-P.-S.-G.-FACT OF THE ONE-VERB WITH THE THINKING WITHIN THE EACH-SENTENCE-SYNTAX.

**~6** FOR THE **D.-C.-C.-R.-~9**: PLEADINGS-SPECIAL ~B: CLAIMS OF THE FRAUDS **ARE** WITH THE CONDITION, WILL &: VOLITION OF THE MIND, ~E: COMPLAINT-FACTS WITH THE C.-S.-S.-C.-P.-S.-G.-CLAIM, ~F: NOW-TIME-PLACE WITH THE **D.-C.-C.-R.-~9-~B**: PERSON'S-KNOWLEDGE OF THE DOCUMENT-BREACH WITH THE DOCUMENT-DAMAGE-CLAIM-FEES BY THE C.-C.-DUTIES.

**~7** FOR THE **D.-C.-C.-R.-~10**: FORM OF THE PLEADINGS **ARE** WITH THE CAPTION-CLAIMS OF THE CORRECT-FACT-COMPLAINT, ~B: NUMBERING-SENTENCES &: PAGES, ~C: BONDING: GLUEING, STITCHING or: MECHANICAL-RIVETTING.

**~8** FOR THE **D.-C.-C.-R.-~11**: FRIVOLOUS-FILINGS OF THE VASSALEE-PLEADINGS **ARE** WITH THE DAMAGE-CLAIM OF THE SANCTION WITH THE F.-S.-S.-C.-P.-S.-G.-D.-COMMUNICATION BY THE COURT-VESSEL-DOCUMENT.

**~9** FOR THE MANDATORY-LEGAL-ELEMENT OF THE RAPE/FEAR **ARE** WITH THE CLAIMS OF THE TORT WITHIN AN ORAL or: WRITTEN-THREATING-PERSONAL-HARM WITH THE **TITLE-~42**: **D.-C.-C.-S.-~1985-~3**.

**~10** FOR AN AUTOGRAPH OF THE LEGAL-COURT-C.-S.-S.-C.-P.-S.-G.-CORRECTIONS **ARE** WITH THE C.-S.-S.-C.-P.-S.-G.-LAW-DOCUMENT OF THE FIVE-DAY-TIME-LIMIT or: SANCTION-FEES.

**~11** FOR THE C.-S.-S.-C.-P.-S.-G.-SUMMARY-CORRECTIONS OF THE FRAUDULENT-COURT-DOCUMENTS **ARE** WITH THE COLLUSION-CLAIM: **TITLE-~28**: **CHAPTER-~85**: **D.-C.-C.-S.-~1359** BY THE VASSALEES.

**~12** FOR THE SUMMARY-CORRECTIONS OF THE DOCUMENT-CLAIM-LIST: **DOCUMENT-CLAIMS-~12-~B**:

**~13** FOR THE **D.-C.-C.-R.-~12-~B-~7** OF THE JOINING **ARE** WITH AN AUTHORITY-VENUE-CLAIM-AUTHORIZATION BY THE FLAG-LAW.

**~14** FOR THE **D.-C.-C.-R.-~12-~B-~6** OF THE NOW-TIME-C.-S.-S.-C.-P.-S.-G.-PLEADINGS **ARE** WITH THE C.-S.-S.-C.-P.-S.-G.-FACTUAL-CLAIMS BY THE C.-S.-S.-C.-P.-S.-G.-DOCUMENTS.

**~15** FOR THE **D.-C.-C.-R.-~12-~B-~5** WITH THE CORRECT-CLOSURE-DOCUMENTS **ARE** WITH THE C.-S.-S.-C.-P.-S.-G.-CERTIFICATION OF THE COURT-CLERK WITH THE PAPERWORK-DOCKETING OF THE C.-S.-S.-C.-P.-S.-G.-PORT-COURT WITH THE D.-C.-F.-P.-S.-C.-V..

**~16** FOR THE **D.-C.-C.-R.-~12-~B-~4**: CORRECT-SERVICES OF THE PAPERWORK **ARE** WITH AN AUTOGRAPH-CANCELATION ON THE FEDERAL-POSTAL-STAMP &: AUTOGRAPH-[EN]D-DORSEMENT ON THE COVER-PAGE-TOP-BACK OF THIS CONTRACT-COURT.

**~17** FOR THE **D.-C.-C.-R.-~12-~B-~3** OF THE C.-S.-S.-C.-P.-S.-G.-VENUE WITH THIS COURT-FILING **ARE** WITH THE C.-S.-S.-C.-P.-S.-G.-CLAIM BY THE PORT-COURT-DOCUMENT-CONTRACT.

**~18** FOR THIS CONTRACT-VESSEL-LAW OF THIS DOCUMENT-FLAG **IS** WITH THE SANCTION-CLAIMS VERSUS A FOREIGN-FLAG.

**~19** FOR THE TRAPS WITHIN THE TITLES, NAMES, DATES, CASE-NUMBERS, [I]TALIC-WORDS, BOXING, CHANGING-VECTORS &: TITLE-SITES **ARE** WITH THE F.-S.-S.-C.-P.-S.-G.-D.-FORMAT BY THE VASSALEES.

**~20** FOR THE **D.-C.-C.-R.-~12-~B-~2**: COURT OF THIS DOCUMENT-CORPORATION **IS** WITH THE DOCUMENT-CLAIM BY THE C.-S.-S.-C.-P.-S.-G.-PORT-JOINING-COURT-AUTHORITY-VENUE.

**~21** FOR THE **D.-C.-C.-R.-~12-~B-~1**: KNOWLEDGE OF THE C.-S.-S.-C.-P.-S.-G.-FACTS **ARE** WITH THE CLAIMS OF THE FACTS WITH THE C.-C. BY THE DOCUMENT-TERMS.

**~22** FOR THE CAUSE OF THE **D.-C.-C.-R.-~9-~B**, **D.-C.-C.-R.-~12-B-~7**, **D.-C.-C.-R.-~56-~D** &: EQUAL-GUARANTEE OF THE **TITLE-~42**: **D.-C.-C.-S.-~1986**: KNOWLEDGE WITH THE CLAIMANT'S-C.-S.-S.-C.-P.-S.-G.-FACTS, WITNESSING &: EVIDENCE.

**~23** FOR THE **TITLE-~18**: **D.-C.-C.-S.-~1621** :FRAUD-FACTS &: PERJURY OF AN OATH **ARE** WITH THE COERCION-VIOLATION: **TITLE-~18**: **D.-C.-C.-S.-~1359**: RAPE OF THE CORRECT-FACTS WITH THE PERSONS'-PERFORMANCE OF THE F.-S.-S.-C.-P.-S.-G. &: **TITLE-~18**: **D.-C.-C.-S.-~3**: F.-S.-S.-C.-P.-S.-G.-CRIMINAL-COMMUNICATION-PARTICIPATION.

**~24** FOR THE CIVIL-CLAIMS or: CRIMINAL-CLAIM OF THE FRAUDULENT-WORD-MEANINGS **ARE** WITH THE DAMAGE-CLAIM OF THE F.-S.-S.-C.-P.-S.-G.-OATH BY THE FIDUCIARY-[OF]FICER WITH THE POINT-IN-TIME-OATH OF THE FIDUCIARY-[OF]FICE WITH THEIR FIRST-DUTY BY AN AUTOGRAPH-DOCUMENT-CONTRACT-DUTY-OATH.

**~25** FOR THE **D.-C.-C.-R.-~24**: CHALLENGE-DUTY VERSUS THE F.-S.-S.-C.-P.-S.-G. **ARE** WITH THE C.-S.-S.-C.-P.-S.-G.-AUTHORITY-CHALLENGE BY THE CORRECT-FACT-CLAIMANTS.

**~26** FOR THE CLAIMANTS'-KNOWLEDGE OF THE COMPLAINT-PLEADINGS **ARE** WITH THE C.-S.-S.-C.-P.-S.-G.-FACTS-CLAIM OF THE **TITLE-~28**: **D.-C.-C.-S.-~2403** OF THIS DOCUMENT-CONTRACT VERSUS THE F.-S.-S.-C.-P.-S.-G..

**~27** FOR THE **D.-C.-C.-R.-~38-A**: C.-S.-S.-C.-P.-S.-G.-TRIAL OF THE TWELVE-PERSON-JURY WITHIN THE SAME-LEVEL-PLANE **IS** WITH THE C.-S.-S.-C.-P.-S.-G.-SUMMARY-CORRECTION-CHALLENGE-CLAIM BY THE C.-S.-S.-C.-P.-S.-G.-CONTRACT-COURT.

**~28** FOR AN EQUAL-BIAS-FILING-COMPLAINT-LOCATION AS THE COURT-BUILDING **IS** WITH THE LOCAL-TERRITORY-CLAIMS OF THE PERSONS'-GREVENCES &: COMPLAINTS WITH THE STOPPING &: CORRECTING-F.-S.-S.-C.-P.-S.-G.-VIOLATIONS BY THE D.-C.-F.-P.-S.-C.-V..

**~29** FOR THE [PRO]NOUNS-[ADJ]ECTIVES, VERB-FICTION OF THE WORDS **ARE** WITH THE MAIL-FRAUD: **TITLE-~18**: **D.-C.-C.-S.-~1341**.

**~30** FOR THE POSITIONS OF THE WORDS: FOR, OF, WITH, BY, IN, AS, ON, WITHIN, VERSUS, THROUGH **ARE** WITH AN AUTHORITY-VENUE-POSITION-LODIAL-FACT-PHRASE OF THE NOW-TIME-AUTHORITY.

**~31** FOR THE **TITLE-~18**: **D.-C.-C.-S.-~1621**: FOR THE CONDITION OF THE PERJURY-MIND **ARE** WITH THE WILLFUL-VOLITIONS-CLAIMS OF THE WRONGFUL-DUTY BY THE F.-S.-S.-C.-P.-S.-G.-OATH-BREACH.

**~32** FOR THE **D.-C.-C.-R.-~41-~A**: VOLUNTARY-TERMINATION OF THE FILE-COMPLAINT **IS** WITH THE VOLUNTARY-WITHDRAW OF THE CASE WITH THE KNOWLEDGE OF THE CORRECTIONS WITH THE DOCUMENTS OF AN AUTHENTIC-FILING-CASE-CLAIM.

**~33** FOR THE **D.-C.-C.-R.-~49**: FACTS OF THE CASES **ARE** WITH THE CORRECT-FACTUAL-CLAIMS-EVIDENCE OF THE CONTRACT-COURT-POSTAL-VESSEL-POSTAGE-STAMPS.

**~34** FOR THE **D.-C.-C.-R.-~50**: NEW-TRIAL OF THE CASE **IS** WITH THE CLAIM OF THE C.-S.-S.-C.-P.-S.-G.-PLEADINGS.

**~35** FOR THE **D.-C.-C.-R.-~54**: C.-S.-S.-C.-P.-S.-G.-SUMMARY-COMMAND **ARE** WITH THE CLAIM BY THE CONTRACT-JUDGE.

**~36** FOR THE **D.-C.-C.-R.-~55**: FORTY-FIVE-DAY-TRUST-LAW-TIME-LIMIT-PARTICIPATION &: THREE-DAY-[RE]SCISSION-LAW OF THE VASSALEES'-CORRESPONDENCE-BACK-PLEADINGS **ARE** WITH THE FAILURE OF THE C.-S.-S.-C.-P.-S.-G. WITH THE D.-C.-F.-P.-S.-C.-V..

**~37** FOR THE **D.-C.-C.-R.-~56**: SUMMARY-JUDGMENT BY THE C.-S.-S.-C.-P.-S.-G. **ARE** WITH THE DAMAGE-CLAIMS BY THIS Q.-W.-C.-D. WITH THE VASSALEES'-EVIDENCE BY THIS C.-C..

**~38** FOR THE **D.-C.-C.-R.-~57**: CLARATORY-COMMAND OF THE DAMAGES **ARE** WITH THE CLAIMS OF THE PHYSICAL-EVIDENCE-DAMAGES WITH THE C.-S.-S.-C.-P.-S.-G.-FACTS BY THE PERFECT-FACT-EVIDENCE-JUDGE.

**~39** FOR AN AUTHORITY-VENUE OF THE DOCUMENT-FACTS **ARE** WITHIN THE COURT-DOCUMENT-CLAIMS OF THE CORRECT-LODIAL-[ARTICLE] WITH AN AUTHORITY-VENUE OF THE CORRECT-POSITIONAL-LODIAL-FACT-PHRASE WITH THE NOW-TIME-LODIAL-FACT-WORDS BY THE C.-S.-S.-C.-P.-S.-G..

**~40** FOR THE BIAS OF THE STATION-DOCUMENTS **ARE** WITH THE PERSON-CLAIM OF THE DOCUMENT-CONTRACT-STATE-TERRITORY WITH THE CONSPIRING-GUISE OF THE PERSON'S-VACATING-DIRECTION WITH THE EQUAL-GUARANTEE OF AN EQUAL-DOCUMENT-CLAIM WITH THE HINDRANCE OF THE DOCUMENT-AUTHORITY WITH THE JUDGE/[AT]TORNEY/PERSONS IN THE PERSON'S-CONSPIRACY WITH THE THREATENING-PERSON BY THE VOTE WITH THE GIVING OF THE PERSON-SUPPORT IN THE LEGAL-MANNER WITH THE DAMAGING OF THE PERSON/SELF or: WITH THE CONSPIRACY-SUPPORT WITH THE **TITLE-~42**: **D.-C.-C.-S.-~1985-~1** WITH THE ONE-OR-MORE-PERSONS' OF THE CIVIL-CONSPIRACY-DAMAGE-PUBLICATIONS WITHIN THE POSTAL-VESSEL-COURT-VENUE.

**~41** FOR AN [AD]JECTIVE OF THE COLORING-[O]PINIONS **ARE** WITH THE MODIFICATION OF THE FACT WITH THE TWO-OR-MORE-FACTS-JOINING OF THE TWO-SEPARATE-WORDS WITH THE VACANT-USE OF THE HYPHEN BETWEEN THE WORDS-STOPPING OF THE LAST-WORD-FACT-MODIFING WITH THE FIRST-FACT-WORD or WITH THE CHANGING OF THE FIRST-FACT-WORD [IN]TO AN [AD]JECTIVE-WORD-MEANING &: [AD]JECTIVE-CHANGES OF THE SECOND-FACT-WORD [IN]TO THE [PRE]DUDICE-[PRONOUN]-SYNTAX-WORD-MEANING AS THE F.-S.-S.-C.-P.-S.-G.-PHRASE.

**~42** FOR THE BREACH OF THE COMMISSION, [O]MISSION or: DOCUMENT OF THE DUTY, AUTHORITY, FIDUCIARY, TERMS, CONDITIONS **ARE** WITH THE CLAIM AS THE [NE]GLIGENT-PERSON.

**~43** FOR THE CLAIMANTS'-KNOWLEDGE OF THESE HANDICAPPING-COMMUNICATIONS WITH THE VASSALEE'S-F.-S.-S.-C.-P.-S.-G.-D.-EVIDENCE **ARE** WITH THE DAMAGE-CLAIM OF THE F.-S.-S.-C.-P.-S.-G.-D. WITH THE VACATING OF THESE FICTIONAL-PAPERS WITH THE SUMMARY-COMMAND-SANCTIONS VERSUS THE VASSALEES WITH THE FOUR-TIMES-DAMAGE-PAYBACK OF THE PERSONAL-LOSS &: LOSS OF THE FREEDOMS, STANDINGS WITHIN THE COMMUNITY &: [E]MOTIONAL-TRAMA WITH THE VASSALLES'-[AT]TORNEY'S- F.-S.-S.-C.-P.-S.-G..

**~44** FOR THE [DIS]CRIMINATION = [A]PARTHEID: TREATMENT OF THE PERSON'S-[E]QUALITY **ARE** WITH THE DAMAGE-CLAIM OF THE [NE]GLECT WITH THE FAVORING OF THE ONE-PERSON WITH THE [A]PARTHEID OF THE SECOND-PERSON. :**TITLE-~VI**: **~1964**: DOCUMENT-CIVIL-RIGHTS-[AC]T.

**~45** FOR THE DURESS OF THE VACATING-CONTRACT-FRAUD or: THREAT OF THE PERSON'S-KNOWLEDGE-CORRECTION-COMPLIANCE **ARE** WITH THE THREAT OF THE BEATING, VIOLENCE, [E]MOTIONAL-PAIN, FREEDOM-LOSS or: FORCING-USE OF THE F.-S.-S.-C.-P.-S.-G.-COMMUNICATIONS or WITH THE [PRI]SON OF THE PERSON/PARTY WITH THE MENTAL or: FINANCIAL-HARM BY THE COLLUSION-FORCE: **TITLE-~28**: **D.-C.-C.-S.-~1359** BY THE CONCLUSION.

**~46** FOR THE FRAUD-FACT=PERJURY: PERSON'S-KNOWLEDGE OF THE FACTS **ARE** WITH THE MODIFICATION-CLAIMS OF THE WITNESSING-FACTUAL-EVIDENCE BY THE FIDUCIARY'S-DOCUMENT-CONTRACT-OATH.

**~47** FOR THE FALSE-SWEARING OF THE TIME-LIMITATIONS **ARE** WITH THE RUNNING-TIME-CLAIM BY THE FIRST-STATEMENT. :SAMPLE: (3X3X3=27, 3X3X0=0, FACT X FACT X FACT = FACT, FACT X FACT X LIE = LIE).

**~48** FOR THE PERSON'S-LARCENY, FRAUD &: CHEATING OF THE VASSALEES-CONTRACT **ARE** WITH THE DAMAGE-CLAIM OF THE FALSE-CLAIM-[AC]T: **TITLE-31**: **D.-C.-C.-S.-~3729-~3733**-C.-S.-S.-C.-P.-S.-G.-CONTRACT-DOCUMENT-STATEMENTS.

**~49** FOR THE POLICY &: CUSTOM OF THE VASSALEES-DOCUMENT-EVIDENCE **ARE** WITH THE DAMAGE-CLAIMS VERSUS THE CLAIMANTS WITH THE SUMMARY-CORRECTIONS OF THE VASSALEES'-F.-S.-S.-C.-P.-S.-G.-D.-EVIDENCE ON THIS DATE-~2-~DECEMBER-~2014 WITH THE C.-S.-S.-C.-P.-S.-G.-CORRECTIONS BY THIS CONTRACT-TREATY-FEDERAL-POSTAL-JUDGE.

**~50** FOR THE RACKETEERING OF THE PERSONS or: GROUP-CONSPIRACY **ARE** WITH THE COMMITMENT OF THE CRIMES WITH THE TORT/COERCION OF THE LIFE, PARTY, PERSON, DOCUMENT or: CORPORATION, BEYOND THE POINT OF THE COVERY WITH AN [EN]GINEERING-F.-S.-S.-C.-P.-S.-G.-DAMAGE VERSUS THE CLAIMANT OF THE RACKETEERING WITH THE FRAUDULENT-BUSINESS-MEANS BY THE FRAUDULENT-FORCE OF THE VOID-OATH-SHERIFFS-PARTMENT.

**~51** FOR THE TORT OF THE DOCUMENT-CONTRACT-FRAUDS **ARE** WITH THE PERSON'S-CONSPIRACY VERSUS THE DUTIES, PERSONS, DOCUMENT-CONTRACT or: CONSTITUTIONAL-STATE WITH THE FIDUCIARY'S-KNOWLEDGE OF THE [EN]GINEERING-F.-S.-S.-C.-P.-S.-G. WITH THE THREATENING-FEAR: **TITLE-~18**: **D.-C.-C.-S.-~871**.

FOR THE COPYCLAIM-COPYRIGHT-DATE-~2-~DECEMBER-~2014 BY THE FEDERAL-COURT-CLERK: **Leighton-Lionell: Ward** &: CLAIMANTS: **Penny-Lee: Gilly** &: **Leighton-Lionell: Ward** WITH THE D.-C.-F.-P.-C.-V.-FEDERAL- C.-C.-N.-**~RE015220419US**. ~ 6

~52 FOR THIS FEDERAL-POSTAL-JUDGE'S-C.-S.-S.-C.-P.-S.-G.-KNOWLEDGE OF THE VASSALEES-F.-S.-S.-C.-P.-S.-G.-PLEADINGS **ARE** WITH THE DAMAGE-CLAIM OF THE TRESPASS-DAMAGE-EVIDENCE &: F.-S.-S.-C.-P.-S.-G. VERSUS THE **Penny-Lee: Gilly's** &: **Leighton-Lionell: Ward's**-C.-S.-S.-C.-P.-S.-G.-Q.-W.-C.-D. & BONDING-EVIDENCE.

~53 FOR THE **TITLE-~18**: **D.-C.-C.-S.-~242-~1** FOR THE TWO-OR-MORE-VASSALEES-PERSONS OF THE COMING-TOGETHER **ARE** WITH THE DAMAGING-VOLITION OF THE DOCUMENT-STATE-COURT-FIDUCIARIES WITH THE TWO-DIFFERENT-PUNISHMENTS, PAINS, PENALTIES or: TREATMENTS WITH THE LEDGER-PERSON-BEING-FOREIGN &: CAPITAL-LETTERING-DEAD-NAME WITH THE PERSON'S-COLOR, RACE, FAITH or: SEX BY THE PUNISHMENT-THREAT.

~54 FOR THE D.-C.-F.-P.-S.-C.-V.-DROGUE-LAW VERSUS THE F.-S.-S.-C.-P.-S.-G.-OATH OF THE VASSALEES-[AT]TORNEYS &: [AC]TORS-F.-S.-S.-C.-P.-S.-G. **ARE** WITH THE FEDERAL-POSTAL-COURT-NEW-OPENING-~4-~JULY-~1775-THROUGH-~NOW-TIME WITH THE C.-S.-S.-C.-P.-S.-G.: D.-C.-F.-P.-S.-C.-V.: FOURTEEN-YEARS BEFORE THE "[U]NIT[ED]-STATES-COURT-FICTION" WITH THE F.-S.-S.-C.-P.-S.-G. BY THESE VASSALEES.

~55 FOR THE TORT-CONSPIRACY OF THE VASSALEES'-FRAUD **ARE** WITH THE FRAUDULENT-COMMAND OF THE FICTION-[AC]TOR'S-F.-S.-S.-C.-P.-S.-G.-D.-FRAUD-COMMAND WITH THE VIOLATION: **TITLE-~15**: **D.-C.-C.-S.-~1639-~A** OF THE [RE]SCISSION-[AC]T WITH THE CLAIMANT'S-DAMAGE-CLAIM-COLLECTION FOR THE CLAIMANT-PAYMENT WITH THE PUNITIVE-DAMAGES OF THE [E]MOTIONAL-LOSS &: COSTS-CURING WITH THE [RE]SCISSION-[AC]T: **TITLE-~15**: **D.-C.-C.-S.~1639-~A**: FALSE &: [MIS]LEADING-STATEMENTS &: **TITLE-~15**: **D.-C.-C.-S.-~78-FF**: PENALTY-FINES(**$25-MILLION**) THROUGH THE '[DE]PARTMENT OF THE JUSTICE'-(U.S.A.C.-FLAG)-~WASHINGTON-D.C.(U.S.A.C.-FLAG), [AT]TORNEY-GENERAL: **Eric: Holder's**-(U.S.A.C.-FLAG) BY THE HEREIN-WRITTEN-CONFESSIONS OF THE VASSALEES-F.-S.-S.-C.-P.-S.-G.-CORPORATION-EVIDENCE-BONDING-PLEADINGS-HEREIN & WITH THE D.-C.-F.-P.-S.-C.-V.-CORRECTION-AUTHORIZATION: **TITLE-~42**: **D.-C.-C.-S.-~1986**: KNOWLEDGE OF THE STOPPING &: CORRECTING BY THIS D.-C.-F.-P.-S.-C.-V.-JUDGE-COMMAND-DATE-~2-~DECEMBER-~2014.

~56 FOR THIS [AC]TOR'S-F.-S.-S.-C.-P.-S.-G.: HEREIN-BONDING-EVIDENCE **ARE** WITH THE FEDERAL-POSTAL-JUDGE: David-Wynn: Miller: COMMAND-CAPTURE-WARRANT-CLAIM OF THE TIPSTAFF-FEDERAL-MARSHALL-DUTY WITH THE STOPPING OF THE WRONG-WRITING-EVIDENCE-HEREIN-BONDING BY THIS TIPSTAFF-OATH: HEREIN-BONDING WITH THE [U]NIT[ED]-STATES-SUPREME-COURT,-~WASHINGTON,-~DISTRICT OF THE COLUMBIA-~20543.

:**Penny-Lee: Gilly**. :DATE-~2-~DECEMBER-~2014.

:**Leighton-Lionell: Ward**. :DATE-~2-~DECEMBER-~2014.

:FEDERAL-POSTAL-COURT-CLERK: **Leighton-Lionell: Ward**. :DATE-~2-~DECEMBER-~2014.

:Leighton-Lionell: Ward.

:CC: FEDERAL-JUSTICE-DEPARTMENT,-~CIVIL-DIVISION-TORT-BRANCH-CLAIMS-STAFF,~PO-BOX-~888,-~BENJAMIN-FRANKLIN-STATION,-~WASHINGTON-DC,-~20044 "WHISTLEBLOWER" FORM-95

:Eric: Holder, :FEDERAL-DEPARTMENT-OF-THE-JUSTICE,-~950-~PENNSYVLANIA-~AVENUE,-~NW,-~WASHINGTON-DC,-~20530-0001 "WHISTLEBLOWER" FORM-95

:CONSUMER-FINANCIAL-PROTECTION-BUREAU,-~PO-BOX-4503,-~IOWA-CITY,-~IOWA,~52244 "WHISTLEBLOWER" FORM-95

:SECURITIES-AND-EXCHANGE OFFICE :WHISTLEBLOWER,-~100-~F~STREET,-~NE,-~MAIL-STOP,-~5971,~WASHINGTON-DC-~20549

:POSTAL-INSPECTOR: CRIMINAL-INVESTIGATION-SERVICE-CENTER :WHISTLEBLOWER FORM-TCR

ATTN: MAIL-FRAUD-~3255-~WEST-~HARRISON-STREET,-~CHICAGO,-~ILLINOIS-~60699-3255

:COMMITTEE-ON-OVERSIGHT-&-GOVERNMENT-[RE]FORM: ~2157-~RAYBURN-HOUSE-OFFICE-BUILDING,-~WASHINGTON-DC-~20515

:GOVERNMENT-[AC]COUNTABILITY-[OF]FICE,-~441-~G-~STREET-~NORTH-WEST,-~Washington-DC-~20548

:[IN]SPECTOR-GENERAL: Mark: Bialek: FEDERAL-[RE]SERVE-BOARD/BUREAU-OF-CONSUMER-FINANCIAL-[PRO]TECTION,-~20th & CONSTITUTION-~AVENUE,-~NORTH-WEST-~STOP-300,-~WASHINGTON-DC-~20051

:[IN]SPECTOR-GENERAL: [DE]PARTMENT-OF-JUSTICE: Michael: Horwitz,-~950-~Pennsylvania-~AVENUE-~NORTH-WEST-~SUITE-~4670,-~WASHINGTON-DC-~20530

:[IN]SPECTOR-GENERAL: SECURITIES-&-[EX]CHANGE-COMMISION: Carl: Hoecker,-~100-~F-~Street-~NORTH-EAST,-~WASHINGTON-DC-~20549-2736

:[IN]SPECTOR-GENERAL: [DE]PARTMENT-OF-THE-TREASURY: Eric: Thorson,-~1500 PENNSYNVALIA-~AVENUE-~NORTH-WEST,-~WASHINGTON-DC-~20220

:PAGES~1 &~2 WITH THE CONSOLIDATION-FACTS BY THE PAPER SAVINGS.
:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

# DEED OF TRUST

**DEFINITIONS**

**Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.**

**(A) "Security Instrument" means this document, which is dated** ~18~APRIL~2006. **together with all Riders to this document.**

**(B)**:BORROWER'S-NAME: Penny-Lee: Gilly & :Leighton-Lionell: Ward.
:BORROWER'S-LAND-LOCATION: ~3198~SHOSHONE~DRIVE,~LAKE-HAVASU-CITY,~ARIZONA~86406.

**Borrower is the trustor under this Security Instrument.**

**(C)**:LENDER'S-NAME: INDYMAC BANK
:LENDER'S-LAND-LOCATION: ~P~155~NORTH~LAKE~AVENUE,~PASADENA,~CALIFORNIA~91101.

**Lender is a** FEDERAL SAVINGS BANK
**organized and existing under the laws of** THE UNITED STATES OF AMERICA

**Lender is the beneficiary under this Security Instrument.**

**(D)**:TRUSTEE'S-NAME: LENDERS FIRST CHOICE
:TRUSTEE'S-LAND-LOCATION: ~4667~MACARTHUR~BOULEVARD~SUITE~200,~NEWPORT-BEACH,~CALIFORNIA~92660.

**(E) "Note" means the promissory note signed by Borrower and dated** ~18~APRIL~2006.

**The Note states that Borrower owes Lender plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than**

**(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."**

**(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.**

**(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):**

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] Other(s) (specify)

**(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.**

**(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.**

**(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.**

**(L) "Escrow Items" means those items that are described in Section 3.**

**(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.**

**(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.**

**(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.**

**(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and**

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT AND IS MADE A PART HEREOF.

~3198-~SHOSHONE-~DRIVE,-~LAKE-HAVASU-CITY,-~ARIZONA-~86406.

VC TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

VC BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

VC THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

VC UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

VC **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

~6

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

~9

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

:WORD-SYNTAX-KEY: ~0=CONJUNCTION (AND/OR), ~1=ADVERB, ~2=VERB, ~3=ADJECTIVE, ~4=PRONOUN, ~5=POSITION, ~6=LODIAL, ~7=FACT, ~8=PAST-TIME, ~9=FUTURE-TIME, ~DPV=:DANGLING-PARTICIPLE-VERB, ~VC=:VOID-CONTINUANCE: 2-SPACE-SYNTAX-RULE, ~NC=:NO-CONTRACT-WORD-MEANING. ~VOID=:STYLES-PARENTHESIS-SYNTAX OR :STYLES-ITALICS-SYNTAX OR :STYLES-QUOTATIONS-SYNTAX OR :STYLES-BRACKETS-SYNTAX OR :STYLES-BOXING-SYNTAX.

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

VC **25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

VC BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.